299 So.2d 326

**Ronald Edward WHIDDON**

**v.**

**STATE.**

**1 Div. 392.**

Court of Criminal Appeals of Alabama.

Sept. 25, 1973.

Rehearing Denied Oct. 30, 1973.

Donald E. Brutkiewicz, Mobile, for appellant.

William J. Baxley, Atty. Gen., and David W. Clark, Asst. Atty. Gen., for the State.

BOWEN W. SIMMONS, Supernumerary Circuit Judge.

Appellant was indicted in Mobile County for violation of Title 14, § 326(2), Recompiled Code 1958, which, omitting the penalty, reads as follows:

"It shall be unlawful for any person to take or attempt to take any immoral, improper, or indecent liberties with any child of either sex under the age of sixteen years, with intent of arousing, appealing to, or gratifying the lust or passions or sexual desires, either of such person or of such child, or of both such person and child, or to commit, or attempt to commit any lewd or lascivious act upon or with the body, or any part or member thereof, of such child, with an intent of arousing, appealing to, or gratifying the lust or passions or sexual desires, either of such person or of such child, or of both such person and such child. Provided, this section shall not apply to the enumerated acts where the purpose of the person committing such act or acts is to render medical or surgical treatment, or when the persons are married legally one to another."

He was sentenced to three years imprisonment in the penitentiary following a jury verdict, in general terms, of guilty as charged in the indictment.

It appears that the indictment follows the statute, supra, and embraces a charge that the defendant attempted to commit the offense embraced in the statute, supra.

■ We note here that there was a total absence of evidence that the defendant consummated or committed the offense other than attempt. Under such circumstances, the jury verdict not having specified the offense, is referable to the offense in the indictment that is supported by the evidence. Flandell v. State, 31 Ala.App. 520, 19 So.2d 401; cert. denied, 246 Ala. 122, 19 So.2d 404.

The issue present in the trial court and here is whether or not the evidence of the state (the defendant did not take the stand or put up any witnesses) was sufficient to support the verdict that the defendant was guilty of an attempt as charged in the indictment and prohibited in the statute, supra.

It appears from the evidence that the prosecutrix, a female child nine years of age when the alleged offense occurred on or about January 27, 1972, was riding her bike in the town of Semmes in Mobile County, when, on Church Street near her home, she was stopped by the defendant who was riding in an automobile, and asked if she had seen his Chihuahua dog. She gave him a negative answer. Then he said "Would you ride down here on your bike and see if you can find him," and "so I rode down there and I didn't see any dog and I told him, and when we got to this church, I told him I didn't see any dog and he got out of the car and he said there was a church and then there was a little area, then ·there was an old parsonage (a vacant house)."

"And he said, 'You go around this way of the church and I will go around that way.' So, he met me there and we couldn't find him, so, you know, the church and then the parsonage, there was a little play area in there, and he said, 'Let's play hustle,' and I said, 'I got to go home,' and he said, 'Oh, it's fun. Let's play.' And I said, 'Well, I got to go home,' and he said, 'I'll show you how to play,' and he said somebody get on base and you run around and you tackle them, and I said, 'Well, I got to go home,' and he said, 'Well, we'll get my sister and we'll go and play,' and I said, 'Well, I got to go home,' and I rode off on my bike.

The witness further testified that she had seen the defendant a few times before; that he never told her the dog's color or name; that after reaching the back of the church the defendant invited her several times to "play tackle", but she refused and rode off on her bike for home. At no time did the defendant put his hands on her or attempt to do so.

Over defendant's appropriate and timely objection another female child ten years of age was permitted to testify as to her experience with the defendant in the same locality at which time she was nine years of age. This experience occurred on the same day as that of the instant prosecutrix, namely, January 27, 1972.

This witness testified that while she was riding her bike and had dismounted therefrom to retrieve some coins she had dropped on the ground, the defendant came by and wanted to know if she had seen his dog. The witness gave a negative answer. At the defendant's invitation, she followed him down one road and then another. She then told him she might have seen it back down the road, but he did not go in that direction. He went in the direction of an old empty house. He asked her to get off her bike and follow him into the old house to see if the dog might be in there.

Once inside the old broken-down house, he wanted to play a game; it was hustle. After picking a room in which to play the game, the defendant explained how it should be played. He said it was like a base, "he chases you and when he catches you, he gets you down and—that's all." The witness further testified that they were not in the room very long when some men came walking down the road working on some lines. She testified that she then escaped through a window, mounted her bike and went home. The witness said the defendant never touched her nor did he say anything nasty to her.

In order to constitute an attempt to commit a crime, certain factual elements must exist. In De Graaf v. State, 34 Ala.App. 137, 37 So.2d 130, we quoted approvingly from Broadhead v. State, 24 Ala.App. 576, 139 So. 119 as follows:

"An attempt to commit a crime consists of three elements: (1) The intent to commit the crime; (2) performance of some act toward the commission of the crime; and (3) the failure to consummate its commission. In other words, in order that there may be an attempt to commit a crime, whether statutory or at common law, there must be some overt act in part execution of the intent to commit the crime, but which falls short of the completed crime; the difference between attempt and commission being that the act or step fails to produce the result intended.

"A criminal attempt to commit a crime consists of two important elements: First, an intent to commit the crime; and, second, a direct ineffective act done towards its commission. It follows that a failure to consummate the crime is as much an element of an attempt to commit it as the intent and the performance of an overt act toward its commission; and, where a crime has been actually committed, the second element or ingredient of an attempt is necessarily lacking, and a prosecution or conviction for an attempt to commit a crime could not be sustained for this reason."

Cases of similar import are collated in the Alabama Digest, Criminal Law, Vol. 6, ⌐44.

A pivotal question is whether or not the enticement as shown by the prosecutrix's evidence, supra, amounted to an overt act.

As to when the conduct of a defendant charged with attempt to commit a crime amounts to an overt act is illustrated in Groneau v. State, Fla.App., 201 So.2d 599, 603, wherein it is said:

"Mere intention to commit a specific crime does not amount to an attempt. Preparation alone is not sufficient. Something more is required than mere menace, preparation or planning. The attempt is complete and punishable, when an act is done with intent to commit the crime, which is adapted to the perpetration of it, whether the purpose fails by reason of interruption, or for other extrinsic cause. State v. Wilson, 30 Conn. 500, 506; State v. Enanno, 96 Conn. 420, 427, 114 A. 386. The act must reach far

enough towards the accomplishment of the desired result to amount to the commencement of the consummation. There must be some appreciable fragment of the crime committed and it must be in such progress that it would be consummated unless interrupted by circumstances independent of the will of the attempter. It is not, however, essential that the actor would have actually succeeded if he had followed the course of conduct upon which he had embarked. State v. Mazzadra, 1954, 141 Conn. 731, 109 A.2d 873. 1 Wharton Criminal Law, Attempt, § 224 (12th Ed.)."

▆▆▆ The "preparation" for commission of an offense consists in devising or arranging the means or measures necessary for commission of the crime, while an "attempt" or "overt act" is a direct movement toward the commission, after the preparations are made. State v. Quick, 199 S.C. 256, 19 S.E.2d 101, 102, 103.

"An indictment for attempt to steal cattle, charging that the defendant did affirmative acts toward commission of crime but failed in perpetration thereof, sufficiently alleged 'overt act' which moved defendant toward the crime and brought him nearer to its commission than mere acts of preparation or of planning." Davis v. State, 66 Ga.App. 877, 19 S.E.2d 543.

"Mere solicitation, unaccompanied by an act moving directly toward commission of intended crime, is not an 'overt act' constituting element of crime of attempt." State v. Davis, 319 Mo. 1222, 6 S.W.2d 609.

"An 'overt act', as an element in an attempt to commit a crime, must be something done that directly moves toward the crime, and brings the accused nearer to its commission than mere acts or preparation of or planning and will apparently result, in the usual and natural course of events if not hindered." State v. Thomason, 23 Okl.Cr. 104, 212 P. 1026, 1027.

▆▆▆ Suffice it to say, the conduct of the defendant as related by the prosecutrix, su-

pra, was an overt act. It went beyond mere planning or the preparatory stage. The defendant devised the "lost dog story" to gain the sympathy and interest of the prosecutrix, persuaded her to go in search of the dog to an area to the rear of a church, whereat he tried to influence her to play a game that involved body tackling, whereby her body would come in contact with him; thus, adroitly stimulating his sexual passion and desire. This semi-isolation and physical contact was calculated to be free of public observation and permitting him to gain the sexual stimulation prohibited by law. His first act was to devise the dog story and lure her to an area where he thought the physical contact could be accomplished. If the defendant was not so motivated why did he, a grown man 29 years of age, married and the father of two children, and a man with a college education, select such a childish game and try to induce the prosecutrix, a mere child, to engage in such childish frivolity. We think the jury could and did very well infer that the defendant was motivated by the desire to get sexual stimulation.

He selected the area and encouraged her to go with him thereto. Had he not been interrupted by the prosecutrix's sudden departure, he probably would have consummated the offense and been subject to prosecution therefor instead of attempt. He went beyond mere preparation; he took a vital step toward consummation.

We think the overt act, supra, was actuated by intent on part of the defendant to arouse his or the prosecutrix's sexual desires, either or both, contrary to and in violation of § 326(2), supra. It cannot be said, with practical reasoning, in view of the defendant's age and mental maturity, that it was an innocent importunity and free of intent to molest the child. At least the approach justifies the jury in finding him guilty of attempt as charged in the indictment.

We hold that the jury was well within its prerogative in finding that both the

overt act and intent required by law were inferable from the defendant's conduct on the occasion.

The next question is the admissibility of the nonprosecutrix's evidence, supra, as to the defendant's conduct with her.

■ As indicated in McElroy's, Law of Evidence, 2d Ed., Vol. 1, p. 166, on trial of a person for a particular crime, evidence of another offense is not admissible if the only probative function is to show the particular character or as sometimes expressed to show his inclinations or propensity to commit a type of crime for which he is being tried. Brasher v. State, 249 Ala. 96, 30 So.2d 31; Mason v. State, 259 Ala. 438, 66 So.2d 557, 42 A.L.R.2d 847, 854. Accused's bad character cannot be proved by particular misdeeds.

However, it must be borne in mind, as Judge McElroy observed, that the state may prove the accused's commission of another crime if such other crime is relevant for any purpose other than his guilt through the medium of bad character.

■ One of the exceptions is that the other crime is admissible to show criminal intent. That issue, not identity, is here involved. Judge McElroy elucidates intent to mean the state of mind of any person at the time he does the act—the act together with such state of mind constituting the charged crime. It may be an intentional doing of the act as distinguished from an inadvertent doing of the act, or we might add, a casual or an isolated instance that found expression in an inept suggestion or approach. Judge McElroy, supra p. 168, further said, with logic and reason, that:

"Because the unintentional doing of an act is abnormal and unusual, the more a person does other acts similar to the act in question, the greater likelihood that the act in question was not done inadvertently. Therefore, in certain crimes the state may prove accused's doing of similar acts as tending to show that in doing of a now charged act, he had that intent that is an element of the now charged crime."

■ We think the conduct of the defendant toward the nonprosecutrix, with factual similarity to the instant case, happening on the same day, shows that he had the intent of offensive molestation that was saturated with immoral depravity toward the prosecutrix. The defendant wanted to get his hands on both children to the end that he might obtain sexual stimulation in violation of law. The enticement and allurement of both children constituted the overt act which was motivated by sexual depravity. At least, we conclude that the jury was justified in so finding, as indicated by their verdict of guilty. Fikes v. State, 263 Ala. 89, 81 So.2d 303(20).

■ The next question is the admissibility of the defendant's inculpatory statement to Deputy Sheriff Minton, who testified that the defendant told him, "Well, Mr. Minton I might as well tell you I am a sex deviate. I just wanted to see if I was cured; I was just testing myself" Also the Deputy testified that the defendant said "I am also under parole out of Nevada * * *."

Counsel for the defendant predicated a timely objection to the foregoing statement on the ground that the state had not proven the corpus delicti of the offense charged in the indictment. Counsel admitted that the Miranda warnings were read to the defendant; that defendant freely and voluntarily, without force, coercion or threats, made a statement to the officer.

■ Specified grounds of objection, as here, waives all others and the court will not be put in error on grounds not assigned. Central of Georgia Ry. Co. v. Wilson, 215 Ala. 612, 111 So. 901.

We have already concluded, supra, that the evidence supported an attempt (an overt act) and an intent to commit the offense as charged in the indictment. The trial court was free of error in admitting the inculpatory statement of the defendant.

**286**

It is ordered that the judgment of guilty entered by the court pursuant to the jury verdict be and same is hereby affirmed.

The foregoing opinion was prepared by Hon. BOWEN W. SIMMONS, Supernumerary Circuit Judge, serving as a judge of this Court under § 2 of Act No. 288, July 7, 1945, as amended; his opinion is hereby adopted as that of the Court.

Affirmed.

ALMON, TYSON, HARRIS and De-CARLO, JJ., concur.

CATES, P. J., concurs in result.