843 So.2d 820 (2002)
Dee Cee SKINNER
v.
STATE of Alabama.
CR-00-0817.
Court of Criminal Appeals of Alabama.
May 10, 2002.
Rehearing Denied June 21, 2002.
*821 Susan Graham James, Montgomery, for appellant.
*822 William H. Pryor, Jr., atty. gen., and Joseph G.L. Marston III, asst. atty. gen., for appellee.
PER CURIAM.
The appellant, Dee Cee Skinner, was convicted of attempted distribution of a controlled substance, see §§ 13A-12-203 and 13A-12-211, Ala.Code 1975. He was sentenced, as a habitual offender, to 20 years' imprisonment; that sentence was enhanced by an additional five years' imprisonment pursuant to § 13A-12-250, Ala.Code 1975, and an additional five years' imprisonment pursuant to § 13A-12-270, Ala.Code 1975.
The evidence adduced at trial indicated the following. On June 13, 1994, Larry Williams and Wendell Major, deputies with the Jefferson County Sheriff's Department, drove to Tuscaloosa to participate in a softball game. They were traveling in Major's personal vehicle and were wearing softball uniforms. They stopped at a BP gasoline service station on McFarland Boulevard at approximately 9:00 a.m. that morning so that Williams could make a telephone call. While Williams was on the telephone, a vehicle drove into the parking lot of the station, and a man whom Williams identified as Skinner got out of the driver's seat. Skinner approached Williams and asked him if he wanted to "buy some weed," which Williams understood to be marijuana. (R. 73.) Williams told Skinner that he did not want to buy any marijuana and explained to Skinner that he was a police officer. Skinner then told Williams that he did not look like a police officer. At that point, the passenger in Skinner's vehicle, who was later identified as Skinner's brother Troy, held up a small plastic bag containing a green leafy substance that Williams believed to be marijuana and that was later determined to be marijuana, and said "Come on, buy this. This is some good stuff." (R. 75.) Williams and Major, who had witnessed the entire incident while sitting in his vehicle, then arrested both Skinner and his brother and held them until the Tuscaloosa police arrived.

I.
Skinner contends that his conviction is due to be reversed because, he says, "the State cannot still prosecute a case when more than three years have passed after the matter was withdrawn and filed." (Issue II in Skinner's brief at p. 2.)
The record reflects that Skinner was indicted in July 1994. After posting bond, Skinner failed to appear for a court appearance on October 28, 1994. A warrant was issued for his arrest on November 15, 1994, and another was issued on March 21, 1995; both were returned "not found."[1] On March 5, 1997, the State filed a "Motion to Withdraw and File with Leave to Reinstate" pursuant to § 15-8-71, Ala. Code 1975, requesting permission to withdraw and file the indictment, i.e., to place it on the inactive trial docket, with leave to reinstate the indictment to the active trial docket when Skinner was located. The trial court granted the State's request. Skinner was eventually located and was arrested on July 29, 2000. On November 2, 2000, Skinner filed a motion to dismiss the indictment, arguing that because it had been more than three years since the State had withdrawn and filed the indictment in 1997, the statute of limitations on the crime had expired; that the State had not moved to have the indictment reinstated since his arrest; and that "[t]o treat the old indictment as current would violate [his] constitutional right to due process." (C. 51.) On November 7, 2000, the State *823 moved to reinstate the indictment to the active trial docket; the motion was granted and Skinner's trial began on November 16, 2000.
Citing Drinkard v. State, 20 Ala. 9 (1852), and Finley v. State, 683 So.2d 7 (Ala.Crim.App.1996), Skinner argues that his prosecution was barred by the statute of limitations found in § 15-3-1, Ala.Code 1975, because the indictment remained on the inactive trial docket for over three yearsfrom March 5, 1997, until November 7, 2000. According to Skinner, the statute of limitations expired on March 5, 2000, three years after the indictment was placed on the inactive docket.
Skinner's reliance on Drinkard and Finley, however, is misplaced. In Finley, the appellant was indicted in September 1990 for a crime that occurred in May 1990. The State nol-prossed the indictment in December 1990 upon agreement by the appellant to pay restitution to the victim. When the appellant failed to pay the restitution, the State reindicted the appellant in February 1994, after the three-year statute of limitations had run. This Court held that the prosecution of the appellant on the second indictment was barred by the statute of limitations.
Unlike the case in Finley, Skinner's indictment was not nol-prossed; rather, the State "withdrew and filed" the indictment pursuant to § 15-8-71, Ala.Code 1975, which provides:
"In all criminal cases in the circuit court in which a capias or warrant of arrest has issued for two terms and has been returned `not found,' the district attorney may, by leave of the court, withdraw and file the indictment, with leave to reinstate the same when the ends of justice require such reinstatement."
Although in Drinkard the Alabama Supreme Court held that withdrawing and filing an indictment was the equivalent of nol-prosing the indictment and operated as a discontinuance of the prosecution so as to bar prosecution outside the applicable statute of limitations, as the State correctly points out in its brief to this Court, Drinkard was decided in 1852, before what is now § 15-8-71 was first enacted.
Section 15-8-71 expressly allows for withdrawing and filing an indictment when an accused cannot be located for prosecution and, by doing so, has superseded the Alabama Supreme Court's holding in Drinkard that such action is the equivalent of nol-prosing an indictment. The law on withdrawing and filing an indictment, as it stands today, is explained in Charles E. Torcia, Wharton's Criminal Procedure § 217 (13th ed.1990), as follows:
"There may be a practice of passing an indictment to the files for the purpose, among others, of holding the charge in abeyance. Such a proceeding does not amount to a nolle prosequi or dismissal of the charge and does not have the effect of an acquittal; it amounts to nothing more than a postponement of the time of trial, and the indictment may be withdrawn from the files and redocketed for trial at a future term."
(Emphasis added; footnote omitted.)
Section 15-3-1 provides: "The prosecution of all felonies, except those specified in Sections 15-3-3 and 15-3-5, must be commenced within three years after the commission of the offense."[2] "A *824 prosecution may be commenced within the meaning of this chapter by finding an indictment, the issuing of a warrant or by binding over the offender." § 15-3-7, Ala. Code 1975. Skinner's prosecution "commenced" when he was indicted in July 1994, one month after the crime occurred. Although the indictment was subsequently withdrawn and filed for approximately three years, withdrawing and filing an indictment under § 15-8-71 is nothing more than moving the indictment from the trial court's active docket to the court's inactive docket; it is not the equivalent of nol-prosing or dismissing the indictment. An indictment that has been withdrawn and filed, i.e., placed on an inactive docket, remains pending against the accused. The statute of limitations is tolled while an indictment is pending against an accused. See Finley, supra. Because Skinner's prosecution was commenced in July 1994, only one month after the crime was committed, it was not barred by the limitations period in § 15-3-1, Ala.Code 1975.

II.
Skinner contends that the trial court erred in its instructions to the jury. (Issue III in Skinner's brief.) He makes two arguments in this regard.

A.
First, citing Thornton v. State, 570 So.2d 762 (Ala.Crim.App.1990), Skinner contends that the trial court erred in refusing to give his requested jury instruction that "[a] verbal solicitation to commit a crime does not constitute an attempt to commit the crime." (C. 75.)
When the trial court refused to give Skinner's instruction, Skinner objected. The trial court then stated the following:
"All right. I'm going to give the pattern jury instruction for `attempt,' and it does, in fact, say that the defendant has to have committed an overt act, which I think is clear to the jury of what that is. In addition, I'm going to define an overt act from the case [Thornton] that you actually cited to me so it will be clear. I'm telling the jury that to find him guilty of this, you know, there has to be an overt act, and I'm giving the definition of `an overt act.' I think to give that particular jury instruction with regard to verbal solicitation to commit a crime would be misleading to the jury. I can see the jury hanging up on that, because there obviously was a verbal solicitation at one point by this defendant, and thatI think that would be confusing to the jury, because they could see that and not go any further. The way that I've got the instructions I think will be clear to them and they will understand the law and find it."
(R. 148-49.) The trial court defined an overt act in its instructions as follows: "Now, an overt act is anything that is done that directly moves towards the crime and brings the accused nearer its commission than mere acts, preparation of, or planning." (R. 157-58.)
In Thornton, the appellant was convicted of criminal solicitation of a controlled substance, a violation of § 13A-12-202, Ala.Code 1975. On appeal, he argued that, pursuant to § 13A-4-1(c), Ala.Code 1975,[3] *825 he could not have been convicted of solicitation because, he said, he could also have been convicted of attempt. This Court stated:
"There is no doubt that the appellant committed the act of criminal solicitation, since he asked the undercover police officer to sell him two dilaudid pills for $ 100. It is not necessary that an actual sale be completed for one to be guilty of solicitation. See Kimbrough v. State, 544 So.2d 177, 179 (Ala.Cr.App. 1989).
"The issue, however, is whether the conduct of the appellant constituted a sufficient overt act so that he could have been convicted of criminal attempt. This court addressed this issue, at length, in Whiddon v. State, 53 Ala.App. 280, 299 So.2d 326, 329-30 (1973).
"`As to when the conduct of a defendant charged with attempt to commit a crime amounts to an overt act is illustrated in Groneau v. State, Fla. App. [1967], 201 So.2d 599, 603, wherein it is said:
"`"Mere intention to commit a specific crime does not amount to an attempt. Preparation alone is not sufficient. Something more is required than mere menace, preparation or planning. The attempt is complete and punishable, when an act is done with intent to commit the crime, which is adapted to the perpetration of it, whether the purpose fails by reason of interruption, or for other extrinsic cause. State v. Wilson, 30 Conn. 500, 506 [(1862)]; State v. Enanno, 96 Conn. 420, 427, 114 A. 386 [(1921)]. The act must reach far enough towards the accomplishment of the desired result to amount to the commencement of the consummation. There must be some appreciable fragment of the crime committed and it must be in such progress that it would be consummated unless interrupted by circumstances independent of the will of the attempter. It is not, however, essential that the actor would have actually succeeded if he had followed the course of conduct upon which he had embarked. State v. Mazzadra, 1954, 141 Conn. 731, 109 A.2d 873 [(1954)]. 1 Wharton Criminal Law, Attempt, § 224 (12th Ed.)."
"`The "preparation" for commission of an offense consists in devising or arranging the means or measures necessary for commission of the crime, while an "attempt" or "overt act" is a direct movement toward the commission, after the preparations are made. State v. Quick, 199 S.C. 256, 19 S.E.2d 101, 102, 103 [(1942)].
"`. . . .

"`"Mere solicitation, unaccompanied by an act moving directly toward commission of [an] intended crime, is not an `overt act' constituting [an] element of [the] crime of attempt." State v. Davis, 319 Mo. 1222, 6 S.W.2d 609 [(1928)].
"`"An `overt act,' as an element in an attempt to commit a crime, must be something done that directly moves towards the crime, and brings the accused nearer to its commission than mere acts or preparation of or planning and will apparently result, in the usual and natural course of events if not hindered." State v. Thomason, 23 Okl.Cr. 104, 212 P. 1026, 1027 [(1923)].' (Emphasis added.)
"In Ex parte James, 468 So.2d 889 (Ala.1984), the Alabama Supreme Court found the words muttered by the appellant were not sufficient to sustain his conviction for attempted theft. The appellant *826 in James approached the store manager in the Winn Dixie store on the evening of the alleged crime. The appellant pointed to another individual in the store. He told the manager that the other individual had a gun. The appellant instructed the manager to do as his companion instructed and `not start no shit.' James at 890. The appellant and the unknown companion both left the store without threatening anyone or without trying to steal the company's property.
"Section 13A-4-1 is based on the New York and Michigan versions of criminal solicitation. Section 13A-4-1(c) is based on a New York statute to the same effect. N.Y. Penal Law § 100.20 (McKinney 1987).
"In People v. Spencer, 66 Misc.2d 658, 322 N.Y.S.2d 266 (1971), the New York court addressed a similar issue as the one before this court: `whether a verbal solicitation to commit a crime constitutes an attempt to commit the crime.' Spencer at 267. In Spencer, the court noted that the majority of American jurisdictions hold that `mere criminal solicitation of another to commit a crime does not constitute an attempt.' Spencer at 269, quoting Gervin v. State, 212 Tenn. 653, 656-57, 371 S.W.2d 449, 450-51 (1963).
"In Spencer, the appellant drove alongside a child who was walking down the street. He tried to convince the child to perform sodomy on him, but the evidence failed to support a finding that the appellant took any further steps to that end. Based on this evidence, the court found the request by the appellant to be a criminal solicitation but not an attempt.
"Our review of the evidence in the cause sub judice leads us to conclude that the appellant's request to buy two dilaudid pills amounted to criminal solicitation and not an attempt. While it is true that the appellant circled the block, this fact does not change our conclusion. His acts were not enough to rise to the level of the required overt act to constitute an attempt.
"Section 13A-4-1(c) was thus not a bar to his prosecution for criminal solicitation."
Thornton, 570 So.2d at 768-69.
Although a verbal solicitation, alone, is not sufficient to establish the overt-act element of an attempt, a verbal solicitation, when coupled with other acts, may, in fact, constitute an overt act. See Whiddon v. State, 53 Ala.App. 280, 299 So.2d 326 (Ala.Crim.App.1973) (holding that the appellant's devising a story about a lost dog in order to induce a nine-year-old girl to go behind a building and his verbal solicitation, once behind the building, to play a game involving tackling were sufficient to establish an overt act). See also Commentary to § 13A-4-1, Ala.Code 1975 ("[F]requently solicitation accompanied by some overt act on the part of defendant may equate an attempt."). Skinner's requested instruction, however, was overly broad. It did not properly convey the possibility that a verbal solicitation when coupled with other acts may be sufficient to establish an overt act. Therefore, we agree with the trial court that Skinner's requested instruction, as written, would have been confusing and misleading to the jury. Therefore, the trial court did not err in refusing to give it.

B.
Second, Skinner contends that the trial court erred in charging the jury on complicity because, he says, "an attempt conviction cannot be predicated on complicity." (Skinner's brief at p. 5.)
*827 At the conclusion of the court's oral charge, Skinner made the following objection to the court's charge on complicity:
"I think that the Court's charge slants severely in favor of the State. It does not go into what fails to prove aiding and abetting. Normally, the Statethe Court would say and if they don't prove such-and-such and such-and-such, then obviously you can't find them, but instead the entire charge seemed to head the jury in that direction."
(R. 166-67.) Skinner never argued to the trial court that he could not be convicted of an attempt crime based on a theory of complicity as he now argues on appeal. "Specific grounds for objection waive all others not specified." Smith v. State, 623 So.2d 369, 376 (Ala.Crim.App.1992), cert. denied, 510 U.S. 1030, 114 S.Ct. 650, 126 L.Ed.2d 607 (1993). See also McGee v. State, 607 So.2d 344 (Ala.Crim.App.1992). "`The trial court cannot be placed in error on grounds not asserted.... The court was required to pass only upon the ground of the objection specified by the [defendant] and those not announced are waived.'" Griffin v. State, 500 So.2d 83, 89-90 (Ala.Crim.App.1986), quoting Johnson v. State, 421 So.2d 1306, 1311 (Ala. Crim.App.1982), overruled on other grounds, Ex parte Casey, [Ms. 1001555, February 22, 2002] ___ So.2d ___ (Ala. 2002). Because Skinner did not object to the court's charge on complicity on the ground he now raises on appeal, this issue is not properly before this Court for review.

III.
In a broad and sweeping allegation, Skinner contends that all of the trial court's rulings throughout the trial that were adverse to him were erroneous. (Issue IV in Skinner's brief.) Other than listing the trial court's alleged erroneous rulings, however, Skinner makes no real argument as to why those rulings were erroneous. He cites to no authorities and he includes little or no facts from the record. Rule 28(a)(5), Ala.R.App.P., requires that an argument contain "the contentions of the appellant with respect to the issues presented, and the reasons therefor, with citations to the authorities, statutes and parts of the record relied on." "Recitation of allegations without citation to any legal authority and without adequate recitation of the facts relied upon has been deemed a waiver of the arguments listed." Hamm v. State, [Ms. CR-99-0654, February 1, 2002] ___ So.2d ___, ___ (Ala.Crim.App.2002). Skinner's arguments regarding the trial court's alleged erroneous rulings are not sufficient to satisfy the requirements of Rule 28(a)(5), Ala. R.App.P.; therefore, these issues are deemed to be waived.

IV.
Skinner contends that his sentence should not have been enhanced pursuant to §§ 13A-12-250 and 13A-12-270, Ala. Code 1975, because, he says, those enhancement provisions do not apply to attempted controlled-substances crimes. (Issue I in Skinner's brief.) In support of this contention, Skinner cites Williams v. State, 665 So.2d 955 (Ala.Crim.App.1994), opinion after remand, 668 So.2d 950 (Ala. Crim.App.1995) (table).
In Williams, this Court addressed the issue whether the enhancement provision in § 13A-12-250 could be applied to a conviction for conspiracy to distribute controlled substances. We stated:
"`"The appellant argues that the trial court erred in adding five years to his sentence pursuant to § 13A-12-250, Code of Alabama 1975. Specifically, he argues that that enhancement statute *828 was not intended by the legislature to apply to a person convicted of a conspiracy to distribute a controlled substance, but applies only to persons convicted of selling a controlled substance within a three mile radius of a school. We agree that ... § 13A-12-250 applies only to the sale or distribution of a controlled substance.
"Section 13A-12-250, Code of Alabama 1975, provides:
"`In addition to any penalties heretofore or hereafter provided by law for any person convicted of an unlawful sale of a controlled substance, there is hereby imposed a penalty of five years incarceration in a state corrections facility with no provision for probation if the situs of such unlawful sale was on the campus or within a three-mile radius of the campus boundaries of any public or private school, college, university or other educational institution in this state.'
"(Emphasis added [in Williams].)
"The appellant was convicted of conspiracy to distribute a controlled substance. The fundamental elements of conspiracy are the agreement between the conspirators to commit a crime and an overt act in furtherance of the agreement. See Wade v. State, 581 So.2d 1255 (Ala.Crim.App.1991). Conspiracy does not require that the crime actually be committed. Calhoun v. State, 460 So.2d 268 (Ala.Crim.App.1984). In this case, the offensive conduct was the appellant's agreement with Williams to distribute cocaine and his overt act in furtherance thereof. The appellant's sentence was not due to be enhanced for the actual sale of the controlled substance. The appellant was not charged with the unlawful sale or distribution of cocaine as required to invoke application of § 13A-12-250, given the plain language of the enhancement statute.
"Section 13A-12-204(c), Code of Alabama 1975, provides: `A criminal conspiracy to commit a controlled substance crime shall be punished the same as the controlled substance crime that is the object of the conspiracy.' The sentence contemplated by § 13A-12-204(c) is the sentence imposed on one convicted of the substantive crime underlying the conspiracy. Section 13A-12-204(c) does not provide for the application of any enhancement provisions to that sentence, just as § 13A-12-250 does not expressly provide for the enhancement of sentences for those convicted of a conspiracy to commit a controlled substance offense."
665 So.2d at 957.
However, the year before Williams was decided, this Court held that the enhancement provision in § 13A-12-250 could be applied to a conviction for attempt to distribute a controlled substance. In Lynch v. State, 640 So.2d 44 (Ala.Crim.App.1993), opinion after remand, 640 So.2d 45 (Ala. Crim.App.1994), we stated:
"We find the appellant's first issue to be without merit. Even though § 13A-12-250 provides enhancement for an `unlawful sale,' this enhancement provision clearly applies to an attempted sale. Section 13A-12-203(c) mandates that `an attempt to commit a controlled substance crime shall be punished the same as the controlled substance crime attempted.' " 640 So.2d at 44.
Skinner argues that this Court's holding in Williams, which was decided one year after the Lynch case, is controlling and reflects this Court's correction of the "faulty reasoning" in Lynch. (Skinner's brief at p. 1.) The State, on the other hand, argues that because Lynch dealt with the *829 attempt statute, § 13A-12-203(c), and not with the conspiracy statute, § 13A-12-204(c), Lynch is controlling in this attempt case, and it points out that this Court has upheld the application of §§ 13A-12-250 and 13A-12-270 to convictions for attempted distribution of controlled substances on two occasions since Lynch was decided. See Harris v. State, 794 So.2d 1214 (Ala. Crim.App.2000), and Frasier v. State, 766 So.2d 181 (Ala.Crim.App.1998).
We agree that Lynch is controlling in this case, although not for the reason the State argues. Although Lynch dealt with the attempt statute and Williams dealt with the conspiracy statute, the attempt statute and the conspiracy statute are identical, at least with respect to this issue. Section 13A-12-204(c) provides that "[a] criminal conspiracy to commit a controlled substance crime shall be punished the same as the controlled substance crime that is the object of the conspiracy." (Emphasis added.) Section 13A-12-203(c) provides that "[a]n attempt to commit a controlled substance crime shall be punished the same as the controlled substance crime attempted." (Emphasis added.) Although the statutes are identical, this Court has taken two different approaches when determining the effect of these statutes on whether the enhancement provisions in §§ 13A-12-250 and 13A-12-270 can be applied.[4]
We believe that the correct approach is the approach taken in Lynch. Although §§ 13A-12-250 and 13A-12-270 provide that an additional penalty of five years' imprisonment shall be imposed only on those convicted of "an unlawful sale of a controlled substance" within three miles of a school or housing project, §§ 13A-12-203(c) and 13A-12-204(c) provide that convictions for conspiracy to commit a controlled-substance crime and attempt to commit a controlled-substance crime "shall be punished the same as the controlled substance crime" that is the object of the conspiracy or that is attempted. (Emphasis added.) In other words, §§ 13A-12-203(c) and 13A-12-204(c) require that defendants convicted of conspiracy or attempt be punished as if they had been convicted of the underlying controlled-substance crime.
In Williams, this Court held that the enhancement provision in § 13A-12-250 was not applicable to a conviction for conspiracy to commit a controlled substance crime despite the language in § 13A-12-204(c) that convictions for conspiracy should be punished the same as the underlying crime because the "sentence contemplated by § 13A-12-204(c) is the sentence imposed on one convicted of the substantive crime underlying the conspiracy" but not "any enhancement provisions to that sentence." 665 So.2d at 957. However, contrary to the reasoning in Williams, this Court has held that "[s]ection 13A-12-250 works in concert with §§ 13A-12-211 and 13A-5-6 and effectively imposes only a single punishment for a single offense." Hardy v. State, 576 So.2d 685, 688 (Ala. Crim.App.1991) (emphasis added). See also Kirkland v. State, [Ms. CR-00-2494, February 1, 2002] ___ So.2d ___ (Ala. Crim.App.2002); State v. Corley, 831 So.2d 59 (Ala.Crim.App.2001); and Pettway v. State, 624 So.2d 696 (Ala.Crim.App.1993). If the enhancement provision in § 13A-12-250, coupled with the "base" sentence in § 13A-5-6, constitutes only a single *830 punishment, then clearly the enhancements in §§ 13A-12-250 and 13A-12-270 are, in fact, a part of "the sentence imposed on one convicted of the substantive crime underlying the conspiracy," 665 So.2d at 957, or attempted. If defendants who are convicted of conspiracy to distribute a controlled substance or the attempt to distribute a controlled substance when the conspiracy or attempt involves a sale are to be punished as if they had been convicted of the underlying sale, as required by §§ 13A-12-203(c) and 13A-12-204(c), they must be subject to the enhancements in §§ 13A-12-250 and 13A-12-270.
Although the Alabama Supreme Court has cited this Court's opinion in Williams with approval, see Browder v. State, 728 So.2d 1108 (Ala.1997), on remand, 728 So.2d 1113 (Ala.Crim.App.1998), the issue in Browder was not whether the enhancements in §§ 13A-12-250 and 13A-12-270 could be applied to a conviction for conspiracy or attempt to commit a controlled-substance crime, but rather, whether the firearm enhancement in § 13A-12-231(13), Ala.Code 1975, could be applied to a conviction for conspiracy to traffic in marijuana. Using the same reasoning we apply today, the Supreme Court held in Browder that the firearm enhancement could be applied to a conspiracy conviction (despite the language in § 13A-12-231(13) that the enhancement applied only to acts "proscribed by this section") because under § 13A-12-204(c), "[p]art of the punishment for this particular controlled substance crime is provided by the firearm enhancement provision of § 13A-12-231(13)." 728 So.2d at 1111. Similarly, part of the punishment for the sale of a controlled substance is provided by the enhancement provisions in §§ 13A-12-250 and 13A-12-270.
Therefore, we hold that §§ 13A-12-250 and 13A-12-270 are applicable to convictions for the conspiracy to sell a controlled substance and the attempt to sell a controlled substance and to the extent that Williams holds otherwise, it is hereby overruled.
We recognize, of course, that by their plain language, §§ 13A-12-250 and 13A-12-270 apply only to convictions involving sales of controlled substances; they do not apply to furnishing, giving away, manufacturing, delivering, or distributing controlled substances, although under § 13A-12-211, Ala.Code 1975, those acts also constitute the crime of unlawful distribution of controlled substances. See, e.g., Ex parte Mutrie, 658 So.2d 347 (Ala.1993), and Clay v. State, 687 So.2d 1245 (Ala.Crim.App. 1996). Thus, the enhancements would not apply to convictions for conspiracy or attempt where the underlying controlled-substance crime was not a sale.
The underlying controlled-substance crime in this case was a sale. Therefore, the trial court properly enhanced Skinner's sentence pursuant to §§ 13A-12-250 and 13A-12-270.

V.
Citing Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), Skinner also contends that his sentence should not have been enhanced by §§ 13A-12-250 and 13A-12-270 because the enhancements were not charged in the indictment. (Issue I in Skinner's supplemental brief.) However, in Poole v. State, 846 So.2d 370 (Ala.Crim.App.2001), this Court held that the State was required to give notice of its intent to seek enhancement under §§ 13A-12-250 and 13A-12-270 and that the enhancements must be submitted and proven to the jury beyond a reasonable doubt, but that the United States Supreme Court's holding in Apprendi *831 does not require the enhancement provisions in §§ 13A-12-250 and 13A-12-270 to be charged in the indictment. In this case, the State filed notice before trial of its intent to seek enhancement of Skinner's sentence pursuant to §§ 13A-12-250 and 13A-12-270; evidence that the attempted sale occurred within three miles of a school and a housing project was submitted to the jury; the jury was given a verdict form that required it to determine whether the attempted sale occurred within three miles of a school and/or housing project; and the jury found that the attempted sale had, in fact, occurred within three miles of a school and within three miles of a housing project. Therefore, Skinner's sentence was properly enhanced.
Based on the foregoing, the judgment of the trial court is affirmed.
AFFIRMED.
McMILLAN, P.J., and BASCHAB and WISE, JJ., concur. SHAW, J., concurs in part and dissents in part, with opinion, which COBB, J., joins.
SHAW, Judge, concurring in part and dissenting in part.
I authored the per curiam opinion for the Court. That opinion reflects the Court's interpretation of Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), with which I continue to disagree. I agree that Dee Cee Skinner's conviction for attempted distribution of a controlled substance should be affirmed. I also agree with the general holding in Part IV of the per curiam opinion that the enhancement provisions in §§ 13A-12-250 and 13A-12-270, Ala.Code 1975, are applicable to convictions for conspiracy and attempt to commit a sale of a controlled substance. However, because I believe that the enhancement provisions must be charged in the indictment, see my special writing in Poole v. State, 846 So.2d 370 (Ala.Crim.App.2001) (Shaw, J., concurring in the result), I would reverse Skinner's sentence and remand the case for resentencing.
NOTES
[1] The record reflects that Skinner had fled to California.
[2] Section 15-3-3 provides that a prosecution for conversion of public revenues must be commenced within six years after the conversion. Section 15-3-5 provides that there is no statute of limitations for capital offenses; felonies involving the use, attempted use, or threat of violence; felonies involving serious physical injury or death; sex offenses involving a victim under 16 years of age; or any felonies involving arson, forgery, counterfeiting, and drug trafficking.
[3] Section 13A-4-1(c) provides: "A person is not liable under this section when his solicitation constitutes conduct of a kind that is necessarily incidental to the commission of the offense solicited. When the solicitation constitutes an offense other than criminal solicitation which is related to but separate from the offense solicited, defendant is guilty of such related offense only and not of criminal solicitation."
[4] Both Lynch and Williams dealt only with the application of § 13A-12-250. However, the language in § 13A-12-270 is identical to the language in § 13A-12-250; the only difference between the two is that § 13A-12-250 applies to sales within a three-mile radius of a school and § 13A-12-270 applies to sales within a three-mile radius of a housing project.